**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| CLARENCE A. RICHARDSON,<br><br>Plaintiff,<br><br>v.<br><br>LELAND DUDEK,[1] Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 24-cv-03734-BLF<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND AFFIRMING THE DENIAL OF BENEFITS**<br><br>[Re: ECF Nos. 11, 15] |

Plaintiff Clarence Richardson ("Richardson") appeals a final decision of Defendant Commissioner of Social Security ("the Commissioner") denying his application for 1) social security disability insurance benefits ("DIB") under Title II of the Social Security Act and 2) supplemental security income benefits ("SSI") under Title XVI of the Social Security Act. Richardson asks the Court to reverse the Commissioner's decision and remand for payment of benefits or, alternatively, to remand for further administrative proceedings. Richardson filed a motion for summary judgment. *See* ECF Nos. 11-1 ("Mot."). The Commissioner filed an opposition. *See* ECF 15 ("Opp."). Richardson filed a reply. *See* ECF 18 ("Reply").

For the reasons discussed below, the Court DENIES Richardson's motion and AFFIRMS the denial of benefits.

**I.   BACKGROUND**

Richardson was born on October 5, 1974, and was 44 years old at the time of his alleged onset date. Admin. Record ("AR") 27, 1331. He has at least a high school education and has past

---

[1] Leland Dudek, the Acting Commissioner of Social Security, is substituted as the defendant in place of former Commissioner of Social Security Martin O'Malley. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

work as a delivery driver. *Id.* at 27. On July 14, 2021, Richardson filed his Title II and Title XVI applications for DIB and SSI benefits. *Id.* at 17. He claimed disability beginning on July 17, 2019, due to a combination of impairments which included chronic kidney disease; diabetes mellitus with nephropathy, neuropathy and retinopathy; congestive heart failure; cardiomyopathy; hypertension; chronic venous insufficiency; and obesity. AR at 17, 20; Mot. at 5. Richardson has coverage to remain insured until December 31, 2025. AR 18; Mot. at 5.

Richardson's application was denied initially and upon reconsideration. AR 17. A telephone hearing before an administrative law judge ("ALJ") was held on October 13, 2023, at which Richardson and a vocational expert testified. AR 17, 38.

The ALJ issued a written decision on November 17, 2023. AR 18. The ALJ found that Richardson was not disabled at any time through the date of decision, and denied benefits on that basis. *Id.* On April 30, 2024, the Appeals Council denied Richardson's request to review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. *See* AR 1-4; Mot. at 2.

## II. LEGAL STANDARD

### A. Standard of Review

Pursuant to sentence four of 42 U.S.C. § 405(g), district courts "have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 USC § 405(g). However, "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). Federal courts "'leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.'" *Id.* (*quoting Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014)).

A court "will disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error." *Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d

996, 1002 (9th Cir. 2015) (internal quotation marks and citations omitted). A court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* (internal quotation marks and citation omitted). If the evidence is susceptible to more than one rational interpretation, the ALJ's findings must be upheld if supported by reasonable inferences drawn from the record. *See id.*

Finally, even when the ALJ commits legal error, the ALJ's decision will be upheld so long as the error is harmless. *See Brown-Hunter*, 806 F.3d at 492. However, "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Id.* The court is "constrained to review the reasons the ALJ asserts." *Id.* (internal quotation marks and citation omitted).

**B. Standard for Determining Disability**

A claimant seeking DIB under Title II must establish disability on or prior to the date last insured. *Deckard v. Saul*, 2020 WL 1157026, at *2 (N.D. Cal. Mar. 10, 2020); *see Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1460 (9th Cir. 1995). Determination of the date last insured involves a calculation of the number of quarters the claimant was employed within a certain time frame. *See* 42 U.S.C. § 423. A claimant seeking SSI under Title XVI must establish disability between the date of the application for benefits and the date of the ALJ's decision. *Deckard*, 2020 WL 1157026, at *2; *see Sophie Jean P. v. Comm'r of Soc. Sec.*, 2019 WL 6749415, at *2 (D. Or. Dec. 11, 2019).

"To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, determining: (1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity, the claimant can still do his or her past relevant work; and (5) whether the claimant can make an adjustment to other work." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (internal quotation marks and citations omitted). The residual functional capacity ("RFC") referenced at step four is what a claimant can still do despite his or her limitations. *Id.* at 1160 n.5.

3

"The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

### III. DISCUSSION

The Court first summarizes the ALJ's decision denying benefits. The Court then addresses Richardson's challenges to the ALJ's decision and the Commissioner's response thereto.

#### A. ALJ's Determinations

At step one, the ALJ determined that Richardson had engaged in substantial gainful activity ("SGA") during the period from July 2020 through December 2020. AR 19–20. The ALJ found that there was no clear evidence as to when in July Richardson's work began and could not determine whether there was a 12-month period without SGA from the alleged onset date of July 17, 2019, to the start of Richardson's employment. *Id.* at 20. Accordingly, the ALJ moved on to consider step two of the sequential analysis.

At step two, the ALJ found that Richardson had the following severe impairments: "chronic kidney disease; diabetes mellitus with nephropathy, neuropathy and retinopathy; congestive heart failure; cardiomyopathy; hypertension; chronic venous insufficiency; and obesity." AR 20. The ALJ also noted that Richardson had obstructive sleep apnea and hyperlipidemia but concluded that those conditions were non-severe. *Id.*

At step three, the ALJ concluded that Richardson's impairments did not meet or medically equal the severity of one of the listed impairments in the regulations. AR 20.

Prior to making a step four determination, the ALJ found that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with limitations. AR 21. The ALJ found that Richardson could "stand and/or walk a combined 2 hours total in an 8-hour workday; occasionally climb, balance, stoop, kneel, crouch, and crawl; never perform tasks requiring depth perception or peripheral vision; have no exposure to hazards such as moving machinery; and have no exposure to fumes, odors, dust, gases, or poor ventilation." *Id.* In making this determination, the ALJ found that Richardson's impairments could "reasonably be expected to cause the alleged symptoms," but that Richardson's statements about the intensity, persistence, and limiting effects of the symptoms "[we]re inconsistent" with the medical evidence

4

and other evidence in the record. AR 22; *see* AR 22–27. Specifically, the ALJ considered the objective evidence and exam findings and found that evidence had failed to "clearly establish an inability to perform at least sedentary work." AR 25. Additionally, the ALJ was not persuaded by the opinion of Edward Meyer, M.D., who had opined that Richardson could "walk zero city blocks without rest or severe pain." AR 27.

Based on the testimony of a vocational expert, at step four the ALJ found that Richardson was unable to perform any past relevant work. AR 27.

At step five, the ALJ considered Richardson's RFC, age, education, and work experience in connection with the Medical-Vocational Guidelines ("Guidelines" or "Grids") and found that Richardson could perform jobs that existed in significant numbers in the national economy. AR 27. Specifically, the ALJ considered testimony from the vocational expert, and found that Richardson would be able to perform the requirements of certain representative occupations such as document specialist, cashier II, and surveillance system monitor. AR 28. Accordingly, the ALJ found that Richardson was not disabled as defined in the Social Security Act. *Id.*

### B. Richardson's Challenges to the ALJ's Determinations

Richardson argues that the ALJ's determination should be reversed for four reasons. First, Richardson contends that the ALJ erred in finding that Richardson engaged in substantial gainful activity from July 2020 through December 2020. Mot. at 12–13. Second, Richardson asserts that the ALJ's RFC finding is not supported by substantial evidence. *Id.* at 13–16. Third, Richardson contends that the ALJ improperly rejected Richardson's testimony. *Id.* at 16–18. Fourth, Richardson argues that the ALJ erred in considering the vocational expert's testimony because it was based on the ALJ's erroneous RFC finding. *Id.* at 18–19. The Commissioner argues that Richardson has failed to show any error in the ALJ's determinations, and that substantial evidence supports the ALJ's determinations at each step of the sequential analysis. *See generally* Opp.

The Court addresses the parties' arguments in turn.

#### i. Richardson's Substantial Gainful Activity

Richardson argues that his work as a childcare provider to two children in his home from July 2020 through December 2020 constituted "unsuccessful work attempt," because it lasted less

than six months and it ended due to Richardson's impairment. Mot. at 12-13; Reply at 2-3. To support his contention, Richardson argues that the ALJ found the work activities lasted no more than six months. Reply at 2 (citing AR 20). Additionally, Richardson argues that he lost his work due to his impairment because "[w]hen the family whose children he cared for moved away, th[e] special arrangement which accommodated [his] disabilities disappeared." Reply at 3.

The Commissioner argues that Richardson's work constituted substantial gainful activity because 1) he worked for seven months from July 2020 to January 2021, and 2) he has failed to provide any evidence proving his work ended due to his conditions. Opp. at 2-3. The Commissioner further argues that any error by the ALJ at step one would be harmless because she did not deny Richardson's claim for benefits based on this step alone and conducted the rest of the sequential analysis. Opp. at 3.

A claimant will be disqualified at step one if he or she is engaged in "substantial gainful activity." *Thomas v. Astrue*, 359 F. App'x 761, 762 (9th Cir. 2009); *see Corrao*, 20 F.3d at 946; 20 C.F.R. § 404.1571. If a claimant's earnings surpass an amount specified by the Social Security regulations, there is a presumption of substantial gainful activity, but that presumption may be rebutted by the claimant. *Thomas*, 359 F. App'x at 762 (quoting *Keyes v. Sullivan*, 894 F.2d 1053, 1056 (9th Cir.1990)). Work that qualifies as an unsuccessful work attempt is not substantial activity. 20 C.F.R. § 404.1574(c); *see Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 694 (9th Cir. 1999) ("The unsuccessful work attempt concept was designed as an equitable means of disregarding relatively brief work attempts that do not demonstrate sustained substantial gainful employment."). To qualify as an unsuccessful work attempt, the work must have: (1) lasted for a period of six months or less; and (2) ended because of the claimant's impairments or because of the removal of a special condition that enabled her to work. *Galanos v. Astrue*, No. 3:10-CV-05849-JCS, 2013 WL 1365901, at 2–3 (N.D. Cal. Apr. 3, 2013); 20 C.F.R. § 404.1574(c).

The Court finds that the Commissioner did not err in determining that Richardson's work as a childcare giver was substantial gainful activity. Richardson stated on his work history report that he worked as a childcare provider from July 2020 to January 2021, which is seven months. *See* AR 405. The Court further does not agree with Richardson's contention that his work during the

overnight hours was "a special arrangement" to "accommodate[] his disabilities." *See* Reply at 2-3 (citing AR 44, 675, 722). The record establishes that Richardson worked as a childcare giver at his home "through the night" because "[the children's] mom worked at night." AR 44. The record also does not support Richardson's contention that his work as a childcare giver terminated because of his impairment. Rather, Richardson's work ended because "[the children's family] moved." AR 45. While the record does not contain evidence on Richardson's earnings in 2021, the ALJ considered this lack of evidence and found Richardson "engaged in SGA from July 2020 through December 2020." AR 20.

The Court further finds that the ALJ correctly did not decide Richardson's claim based on his SGA determination at step one. As the ALJ explained, there is no clear evidence in the record "indicating when in July 2020 [Richardson's] work began," and thus she could not decide whether "there [was] a 12-month period without SGA from the alleged onset date of July 17, 2019 to the start of [Richardson's] employment." AR 20. Rather, "[i]n an abundance of caution," the ALJ considered and analyzed the remaining steps in the sequential analysis. AR 20.  Thus, the Court finds that Richardson has not shown any harm concerning the ALJ's SGA determination because the ALJ did not determine Richardson's claim at step one. *See Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) ("We may affirm the ALJ's decision even if the ALJ made an error, so long as the error was harmless, meaning it was inconsequential to the ultimate nondisability determination.") (internal quotation omitted).

### ii.     The ALJ's RFC Finding Is Supported by Substantial Evidence

Richardson argues that the ALJ's RFC finding is not supported by substantial evidence. Mot. at 13. Richardson argues that the ALJ's RFC finding has failed to account Richardson's testimony that he needs to elevate his legs three to four times a week for 45 minutes and that the swelling in his leg worsens if he sits for a long period. *Id.* (citing AR 47–48, 54). Richardson further contends that the ALJ's RFC finding is not supported by the medical record. Mot. at 14-16.

In response, the Commissioner argues that substantial evidence supports the ALJ's RFC finding that " 'the medical evidence does not indicate' that [Richardson] would need to elevate his legs more than a work schedule would allow." Opp. at 4 (citing AR 25). The Commissioner argues

1  that the Court should uphold the ALJ's RFC finding because it is supported by substantial evidence in the record. Opp. at 5.

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, "the claimant 'must produce objective medical evidence of an underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281–82 (9th Cir. 1996)). Second, if the claimant does so and there is no affirmative evidence of malingering, the ALJ can reject the claimant's testimony as to the severity of the symptoms "'only by offering specific, clear and convincing reasons for doing so.'" *Tommasetti*, 533 F.3d at 1309 (quoting *Smolen*, 80 F.3d at 1281); *see also Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).

The Court finds that substantial evidence in the record supports the ALJ's RFC finding. Here, the ALJ thoroughly considered the medical records and Richardson's symptoms in her RFC finding. Specifically, the ALJ considered Richardson's statements that it is difficult for him walk because his feet burn, tingle, and swell up; that he gets shortness of breath while walking; that he gets swelling in his calf area and when that occurs he tries to lie down and elevate his legs; that he elevates his legs three to four times a week for 45 minutes to an hour each time; and that Richardson has been taking his medications and experiences side effects from his pain medication including brain fog, dizziness, drowsiness, and vomiting sometimes. AR 21–22. The ALJ acknowledged that Richardson's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found the "intensity, persistence and limiting effects" of Richardson's symptoms "are not entirely consistent with the medical evidence and other evidence in the record." AR 22.

In finding Richardson's statements inconsistent with medical and other evidence in the record, the ALJ cited four main points. First, while Richardson alleges shortness of breath, fatigue, and other symptoms, he was still able to provide childcare to two children from July 2020 to December 2020. AR 25. Second, while Richardson alleges a need to elevate his legs, the "medical evidence does not indicate that elevation would be required during work hours, beyond what could

8

be performed during work breaks and outside of work hours." *Id.* Third, few complaints for side effects from his pain medications are noted by his providers and his mental status exams are within normal limits. *Id.* Finally, the medical records indicate that he had been noncompliant with his medications on more than one occasion, while his testimony indicates that he "always takes his medications." *Id.* at 25; *see id.* at 564, 569, 583. Considering the medical evidence in the record, the ALJ determined that while Richardson's activities might be limited to certain degrees, the "objective evidence and exam findings" in the record "do not clearly establish an inability to perform at least sedentary work." AR 24–25. Thus, the ALJ has thoroughly examined the medical record and considered Richardson's testimony in making her RFC finding. *See id.* at 22–27.

The ALJ provided clear and convincing reasons in finding Richardson's testimony was not entirely consistent with the medical evidence in the record. Contrary to Richardson's contention that the ALJ's RFC finding excluded Richardson's testimony on the frequency of Richardson's need to elevate his legs, Mot. at 13, the ALJ explicitly considered this testimony and decided it did not conflict with the medical evidence on Richardson's lower extremity edema, *see* AR 22–25. The ALJ found no conflict between the medical evidence and Richardson's testimony because, as stated above, the medical evidence does not indicate that "elevation would be required during work hours" beyond what could be done on regular work breaks or outside of work. AR 25; *see also* AR 47–48 (Richardson only testified that he must elevate his legs three to four times a week, not when during the day the leg elevation must occur). To the extent that Richardson contends the vocational witness testimony established that "someone who needed even one additional break during the workday of 15 minutes duration could not sustain competitive employment," Mot. at 13, the ALJ considered the vocational witness's testimony and found that Richardson could still adjust to "other work that exists in significant numbers in the national economy." AR 28.

Indeed, the ALJ found that "multiple medical opinions indicate that [Richardson] is more capable than alleged." AR 25. The ALJ reviewed three state agency medical consultants and a consultative examining physician who each assessed that Richardson could perform within the bounds of at least a limited range of light work. *See* AR 25–26, 68, 86, 108, 127–28, 147, 1203–04. For example, the ALJ reviewed Dr. Lee's assessment of Richardson, where Dr. Lee took into

account Richardson's impairments and opined that Richardson can lift or carry 10 pounds frequently; can stand or walk for about 6 hours in an 8-hour workday; can sit for about 6 hours in an 8-hour workday; can occasionally climb ramp, stairs, ladders, ropes, or scaffolds; and can frequently balance and stoop. AR 25, 67–68, 86–87. The ALJ then reviewed Dr. Vu's assessment, in which Dr. Vu agreed with Dr. Lee's determination and further opined that Richardson should not be exposed to hazards such as moving machinery. AR 25, 107–108, 110. The ALJ found that Dr. Lee and Dr. Vu's opinions were consistent with the record as a whole because there is "little indication [from subsequent medical evidence] that his functional abilities materially worsened." *Id.* at 26. Indeed, the ALJ reduced Richardson's standing time further than either Dr. Lee or Dr. Vu determined to be necessary to only two hours in an 8-hour workday by taking into account the consultative examiner's findings, prior State agency determinations, and Richardson's subjective allegations. *Id.* at 27, 147, 1203–1204. To the extent Richardson relies on medical opinions of Dr. Shafi, Dr. Bito-Onon, Dr. Meyer, and Dr. Jain to support his contention that he must elevate his legs during work hours, this Court has reviewed those medical opinions and found that they do not support his contention or contradict the ALJ's finding that elevation would not be required during work hours. *See* Mot. at 14–15 (citing AR 497, 499, 503, 513, 519, 527, 901-04, 1102-03, 1087, 1099, 1127-28, 1281, 1302, 1332-33)

In light of the ALJ's thorough reasoning, this Court cannot "second-guess" an ALJ's reasonable interpretation of a claimant's testimony because it is "supported by substantial evidence." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Based on the ALJ's detailed review of Richardson's testimony and the medical evidence, the Court finds the ALJ provided clear and convincing reasons for finding Richardson's testimony inconsistent with the medical evidence as a whole. Thus, this Court finds that the ALJ's RFC determination is supported by substantial evidence in the record.

### iii. The ALJ Properly Discounted Richardson's Subjective Testimony.

Richardson argues that the ALJ failed to provide clear and convincing reasons for rejecting his testimony about his symptoms. Mot. at 16-18. In response, the Commissioner argues that the ALJ considered Richardson's allegations of his impairments and the medical record and "reasonably

1  concluded" that Richardson "had the capacity to perform a reduced range of light work." Opp. at 6.

2  Under the Social Security Act, the ALJ is required to consider evidence other than the medical record because subjective symptoms may suggest a higher severity of impairment than what is reflected by the objective medical record. *See* 20 C.F.R. § 404.1529(c)(3). While an ALJ may not discount a claimant's subjective complaints based solely on a lack of objective medical evidence, the ALJ "may find the claimant's allegations of severity to be not credible" based on specific findings and other evidence in the record. *See Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); *see also Burch*, 400 F.3d at 680–81 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his credibility analysis."). In determining the claimant's credibility, the ALJ relied on ordinary techniques of credibility evaluation, such as (1) inconsistencies either in the testimony or between the testimony and the claimant's conduct, and (2) the medical record addressing the claimant's symptoms. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); see also *Dixon v. Saul*, 411 F.Supp.3d 837, 854 (N.D. Cal. 2019).

The Court finds that the ALJ provided clear and convincing reasons for discounting Richardson's "alleged loss of functioning." AR 25; *see Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014) ("the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.") (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ reviewed the medical record and found that Richardson's impairment improved with treatment. *See* AR 23–24. For example, the ALJ explained that in February 2021, examination results showed significant improvement in Richardson's left ventricular systolic function and no deep vein thrombosis in both legs. AR 24 (citing AR 1163). The ALJ also explained that in February 2022, Richardson reported that his shortness of breath with exertion was "mild" and blood pressure was "well controlled." AR 23 (citing AR 1284). Further, the ALJ noted that in September 2022, Richardson reported that while burning "bothers him at times, […] it has gotten to the point that he just ignores it." AR 24 (citing AR 1243). In light of medical records showing Richardson's leg swelling and burning symptoms were generally improved with treatment, the ALJ reasonably found that the Richardson's symptoms were not disabling. *Dixon*,

11

411 F.Supp.3d at 854 (quoting *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017)) ("Such evidence of medical treatment successfully relieving symptoms can undermine a claim of disability"). The ALJ also noted that Richardson did not always take medication as instructed, suggesting that he did not experience debilitating effects such that he had to take medication regularly. *See* AR 22 (citing AR 569) (Richardson was noncompliant with most of his medications for four months); AR 24 (citing AR 1243) (Richardson reported that he took gabapentin for his symptoms every "now and then."); *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (holding that an ALJ may consider factors including "unexplained or inadequately explained, failure to seek treatment or follow a prescribed course of treatment") (citation omitted).

Further, as discussed above, the ALJ considered both Richardson's testimony and the objective medical record and found that most of the medical records did not corroborate Richardson's alleged degree of limitation. *See* AR 25–26. Specifically, the ALJ's determination is based on the assessments of three state agency medical consultants and a consultative examining physician, each of whom opined that Richardson could sit for about 6 hours in an 8-hour workday, that he could walk for at least 2 hours a day, and that he could perform within the bounds of at least a limited range of light work. *See id.* (citing AR 68, 86, 108, 127–28, 147, 1203–04). In addition, the ALJ considered, but discounted, Dr. Meyer's opinion that Richardson can walk "zero city block," because (1) no other record supported the extreme conclusion, and (2) the necessary portion of the assessment was incomplete. AR 27 (citing AR 1239).

Because the ALJ articulated clear and convincing reasons to conclude that Richardson's testimony was not entirely consistent with medical record, the Court finds that the ALJ properly rejected Richardson's testimony. *See Burch*, 400 F.3d at 681 (9th Cir. 2005) ("[medical evidence] is a factor that the ALJ can consider in is credibility analysis").

### iv. The ALJ Properly Relied on the Vocational Expert Testimony.

Richardson argues that the Court should reverse the ALJ's determination at step five because she relied on the vocational expert's testimony that was based on an incomplete hypothetical question. Mot. at 18. Richardson argues that "the ALJ omitted Richardson's credible allegations [about] the need to elevate the legs during the workday" when posing the hypothetical questions to

the vocational expert. *Id.* Richardson contends that the expert's determination was based on an incomplete hypothetical and had no evidentiary value. *Id.* at 18–19.

The Commissioner responds that Richardson's argument "simply relies on and restates [Richardson's] unconvincing claims that the ALJ erred in considering evidence and offers no independent basis for remand." Opp. at 1 n.1.

The Court disagrees with Richardson' argument that the ALJ improperly relied on vocational expert's testimony that was based on an incomplete hypothetical question. The Court finds that Richardson's contention is a restatement of his disagreement with the ALJ's interpretation of the record and the ALJ's RFC finding. *See* Mot. at 18-19. As discussed above, the Court finds that the ALJ's RFC determination is supported by substantial evidence in the record. Because the hypothetical posed to the vocational expert is based on the ALJ's correct RFC finding, the ALJ did not err in considering the vocational expert's testimony. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir. 2008) (finding the ALJ did not err in his RFC finding and rejecting a claimant's challenge to an ALJ's step five analysis on the basis that the vocational expert's testimony was not based on an incomplete hypothetical posed by the ALJ). Accordingly, the Court finds that Richardson has failed to identify any reversible error in the ALJ's step five analysis.

## IV.  ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Richardson's motion for summary judgment is DENIED. The denial of benefits is AFFIRMED.

Dated: March 19, 2025

_____
BETH LABSON FREEMAN
United States District Judge